Thank you, Your Honor. I may please the court. My name is Stuart Dunwoody and I represent the appellants David and Ava Cassirer and the United Jewish Federation of San Diego County. Mr. Cassirer and Sue Halliday of the United Jewish Federation are in court today. I'd like to reserve three minutes for rebuttal. Sure. Your Honors, the district court's invalidation of Section 338C.3 is an unprecedented extension of foreign affairs field preemption and should be reversed. It's unprecedented because that statute is a neutral, generally applicable statute of limitations, and unlike the few statutes that have been preempted under field preemption, says nothing about foreign governments, foreign persons, or foreign events. Now before I talk more about field preemption, let me just briefly note that the conflict preemption that was being discussed in the last case isn't an issue here. This painting was never recovered by the U.S., therefore never was subject to external restitution. The district court agreed that conflict preemption didn't exist here and the Thyssen-Bornemisza Foundation has not challenged that in its brief. So we're only talking about foreign affairs field preemption. But did you mention, since you mentioned the case, does it make any difference that the statute was amended to get around the Von Sacher case and run as it was claimed? No, Your Honor, it doesn't. I mean, the fact that this court in Von Sacher said that 354.3 was invalid didn't disable the state of California from ever creating any other statute of limitations that a Holocaust claimant might be able to invoke. And so just the fact that it responds to this court's ruling, it does not show its invalidity, as I will explain more in a moment. Well, what credence do we give to the legislative history here? Well, Your Honor, as you know, there are two prongs that Mosesian requires, both the whether the statute intrudes on a matter of foreign policy and also whether the state did that with no real claim to be addressing an area of traditional state responsibility. And so where you look, and Mosesian said that in determining whether the statute has no real claim to be addressing an area of traditional responsibility, you look at the text of the statute and you look at the legislative findings, that is, the actual findings of the legislature voted on. It said in footnote three that a reserved decision on, quote, how courts might determine the real purpose of a statute when that purpose is not apparent from the legislative findings and scope of the statute. So we submit that you look at the real purpose of the statute by looking at the statute itself and the explicit legislative findings and that you don't go into the legislative history to see if one of the hundred or so legislators who altogether unanimously passed this, if one or two of them was or had Holocaust victims in mind. But in any event, even if you do go to the statutory to the legislative history, that, there's nothing in there that shows that this is subject to field preemption. The legislative history does mention the von Zahar decision, but with one exception, all of that mention is in the context of discussing the split in California case law, the NAFSCAR and Society of Pioneers cases, over application of the discovery rule that was created by 338C2. And so now I said there's a single exception. Can the legislature have dealt with that ambiguity without extending the statute of limitations for six years? Yes, it certainly could have. But I don't think this court sits in judgment on did the California legislature do it the way that this court would have done it or the most logical way. Doesn't that shed some light on the state's real purpose in enacting the amended statute? I don't think it does, because I think that in looking at the real purpose, you are looking at whether the state is acting in a traditional area of state responsibility, such as creating a statute of limitations. And there are many variations on statutes of limitation. The fact that in the give and take of the legislative process, this is what they came up with, is not enough to preempt it for field preemption purposes. And I did want to mention that there is one mention in the legislative history of the invalidation of 354.3 and the mention that some claimants who had, that claimants who delayed filing in reliance on 354.3 might be prejudiced and that the amendment would allow them to file timely claims. But this doesn't show a real purpose to address something other than a traditional area of state responsibility. Instead, what it recognizes is that some claimants who had a timely claim under Section 338, and Mr. Kucera was one of those, delayed filing in reliance on the invalidated Section 354.3. And it recognizes that it's fair to give those claimants additional time under an amendment to Section 338 now that 354.3 has been invalidated. Remember, this court in the last Banzhagar case didn't say Holocaust claimants can never make a claim. Allowing them to make a claim is completely contrary to federal policy. Instead, it said that it was absolutely okay for state courts to adjudicate common law claims. And this just gives a little more time to adjudicate those common law claims. And also, this one common legislative history shouldn't be enough to invalidate the statute. Because otherwise you'd have a situation where tomorrow Nevada, say, could enact the exact same statute, the exact same language. But if nobody had mentioned the Holocaust claimant in the legislative history, that would be valid and this wouldn't. And that just makes no sense. So to go back to the Mosezian test, it's a two-part test. And the first part of it is whether the state intrudes on a matter of foreign policy. And as you're assessing the Mosezian test, in addition to comparing 338c.3 against the statutes that were invalidated in Banzhagar and Mosezian, I think the court also needs to look at the 1982 and 89 amendments to section 338. That's what was referred to as the old law sometimes in the previous argument. Because we know from Banzhagar that those amendments are not preempted. There was nothing in the Banzhagar case that suggested that the discovery rule in the 82 and 89 amendments, that's now codified as 338c.2, was preempted. But section c.2 was enacted after the Holocaust. It's broad enough to encompass claims relating to fine arts stolen in the Holocaust. It doesn't cover the waterfront. Instead, it's limited to actions regarding an article of historical, interpretive, scientific, or artistic significance that's been taken by theft. Or duress. Pardon me? Or duress. No, I'm talking about c.2 right now. And c.2 does not mention duress, I believe, Your Honor. But the amendment that... It does. The amendment is different. I'm just making a point. That was one of the points that Judge East relied upon. That is correct. And the point that I'm making now is that the California legislature in 82 and 89 enacted a statute of limitations that doesn't cover all claims of property. And it was one that could be invoked by Holocaust victims. And yet, in the last Banzhagar case, this court didn't say, well, that's field preempted as well. Instead, it had no problem with that statute. So, to the extent that c.3 is like c.2, that's an indication that it is not preempted. So, neither prong of the Mosaisian test is present here. First, it doesn't intrude on a matter of foreign policy. Nothing in its text or findings says anything about foreign governments, persons, or events. It doesn't create a remedy for wartime injuries or legislate with respect to restitution and reparation claims. And that's, of course, what this court found was the problem with 354.3. 338c.3 is a generally applicable statute of limitations that applies to all claims against a museum, gallery, auctioneer, or dealer regarding fine art stolen in the last 100 years. And this general applicability is confirmed by one of the cases we cite in our brief, Raffaele, which involves a photo stolen in the U.S. in the 1970s. And that case is invoking that statute of limitations. So, in this respect, c.3 is no different from c.2, which we know from Banzhagar isn't preempted. Now, c.3 doesn't explicitly limit itself to California claims, but that doesn't show an intrusion on foreign events because none of c.338 or other California statutes of limitation that I'm aware of limit themselves to California claims. Instead, they're construed to cover claims against defendants that are subject to personal jurisdiction in the state of California. And notably, the foundation has stipulated that it's subject to personal jurisdiction. That's ER 136. So, the first prong is not present. The second prong, finding that California had no real claim to be addressing a traditional area of state responsibility, clearly enacting statutes of limitations is a traditional area of state responsibility. Mr. Stauber successfully argued that for the plaintiffs in the Dunbar v. Sager-Tomschitz case with regard to the Louisiana statute. And there's just no dispute that it was an area of traditional responsibility when California enacted the statute in the first place or when it amended it in 82 and 89. And so, why shouldn't it be here? So, the district court really went wrong by trying to find a real purpose in the statute by going beyond the text of the statute and the legislative findings to look at the legislative history. And I've already mentioned a couple of things in the legislative history that didn't support, that don't support preemption. A few other items. The district court cited the fact that Attorney Randall Schoenberg had the idea for the original bill that, after various amendments, became 338C3. But that doesn't show, you know, that it's outside the traditional state responsibility. Mr. Schoenberg is a leading expert in cases involving stolen art. It's entirely appropriate that the legislature would receive his input. In any event, whoever, who had the idea for the statute has no bearing on whether the state had a serious claim to be addressing an area of traditional state responsibility. And there's also no evidence that the legislators who unanimously approved the statute knew that he represented the von Sager plaintiff or that he had represented Mr. Kassirer in a previous lawsuit. I already mentioned that the fact that 338C3 was enacted after von Sager doesn't show that it's preempted. California was entitled to create a new statute that didn't express a view on holocaust. I mean, in von Sager, this court said, no, it's invalid because it expresses a view on the holocaust and it legislates a remedy for wartime injuries. California responded by enacting a statute that did neither of those things that really is the same as 338C2 with respect to those two issues. And this court should respect California's ability to legislate. Wouldn't it be irrelevant anyway? Isn't this the way the three parts of government work? If the legislature doesn't like what we do as a court, they can pass other legislation. That's right. And then that legislation, of course, in turn, has to pass constitutional muster. But I don't think you look at a statute that would pass constitutional muster in any other state and say, oh, it flunks in California because that came after the von Sager case. And that was my point. Okay, there's two prongs, though, here. Yes. One is the real purpose. Suppose we disagree with you on the real purpose aspect. What's your argument that this statute does not intrude on foreign affairs? Okay, and with respect, Your Honor, that other prong, the first prong we mentioned is that there's no real claim to be addressing an area, a traditional area of state responsibility. And that's where courts get into the real purpose and say, well, you know, Mosezian said that the statute there was insurance regulation, but it only covered insurance policies by Armenia genocide victims in Asia during from 1875 to 1920. And, you know, that shows that really it's not addressing traditional. I'm asking you to address the other aspect of this argument. You have 33 seconds left to do it. Yes, thank you. I guess that would be nice to hear. Yes. So it doesn't intrude on a matter of foreign policy because it doesn't say anything about foreign governments, persons or events. It doesn't create a remedy for wartime injuries, which is one of the things that this court relied on in von Sager. And it doesn't legislate with respect to restitution and reparation claims. It is generally applicable. So, I mean, a generally applicable statute of limitations generally, even though, you know, any of the California statutes of limitations might be used on a case to which a foreign party is involved, they aren't considered to have an effect on to intrude on foreign policy. Instead, they have what Allen versus Clark said was an incidental and indirect effect. And that sort of effect is fine. And then, as I mentioned, you know, it's only, it should be construed like all other statutes of limitations just to apply to defendants who are subject to personal jurisdiction in the state of California. And so for all those reasons, it does not intrude on foreign affairs. Okay. All right. Thank you, Your Honor. Thank you. May it please the court. Attorney Thaddeus Stover on behalf of the Tiefenborn and Misa Selection Foundation. It's interesting that the court made the observation that one of the paintings that we're talking about today is across the street. The painting we're talking about in this particular case, the Pissarro, is not across the street but across the Atlantic. And is owned by an agency instrumentality of a foreign sovereign. But you didn't make a foreign sovereign immunities claim in this case, did you? Yes, we did. In fact, we spent seven years on the issue of whether or not this court had jurisdiction over the Kingdom of Spain and the Tiefenborn and Misa. That's not what's at issue here today. All right. What's at issue here today, and I'm trying to make the point that this is a special statute that the California legislature passed. But for this special statute, the claim against the Tiefenborn and Misa could not go forward in California or anywhere else. And that the court and Judge Fees focused not on just one factor, but a constellation of factors that were brought together in this unique environment that allowed or would allow an otherwise claim that could not proceed to proceed. Counsel points out the Dunbar case. And yes, that is a case that I argued along with my colleague, Ms. Andre, in Louisiana. What's important to point out, not only in that case, but also in the case that we successfully argued on behalf of the Toledo Museum of Art and the Detroit Institute of Art, U.S. museums. That when you have a garden variety statute, a statute of limitations that's generally applicable to all types of stolen property, that yes, it is important and proper for the court to apply those statute of limitations. What we come before this court today is not to ask the court to not apply garden variety statute of limitations. What we come to this court to say is, you can't change the rules in the middle of the game. That's what von Saar says. That's what Montessian says. As much as the California legislature would like to make a policy statement on Holocaust-related claims, it may not do so. Excuse me, counsel, interrupting you here. I look at this statute. The plain language of the statute does not touch on Holocaust-era artwork or foreign affairs. Am I mistaken? Yes, you are, Your Honor. And let me explain why I think you're mistaken. That as Montessian tells us, and von Saar also tells us, what you call the statute or what you use in the statute as particular words or language does not define the statute. You have to go to the real purpose of the statute. And that's precisely what Judge Spees did in applying the applicable precedent. He looked at the timing of this statute, and it coming down right after not only the von Saar case is up on cert, but also right after the Ninth Circuit, in an en banc opinion, allows the case to proceed on a forced-out immunity exception here in California. He also looked at the fact that this is a unique statute that bars the use of the borrowing statute, something that is not seen in any other statute in California. He looked at the parties that were engaged in bringing the statute forward. He looked at the fact that the statute was going to be, in the give-and-take of legislative action, a five-year statute of limitations. But instead, at the last minute, it gets changed to a six-year statute of limitations. Because, but for that, Mr. Kossiris' claim would not be allowed to go forward. But isn't that the way our government works, the three branches? If the legislature doesn't like what the court does, the legislature passes a statute. And then we can determine its constitutionality. Absolutely. I absolutely agree. And that's why, in a point that Judge Pregerson made in the last case about the court sticking its nose in, exactly what the court needs to do here, it does need to stick its nose in this particular case. The case is judiciable. Mr. Kossiris and his family and his interests are allowed to file a claim here in the United States. That's exactly what the Foreign Submarine Act provided for. So it's judiciable. But what is not allowed is for the legislature to create special rules that apply to his claim to allow it to go forward. Especially in a situation where the legislature acknowledges in the very findings, in the very legislative history, that it will provide relief for a very unique set of claimants. So, as Judge Kaczynski said in the Amboncourt argument on Mosesian, you can call the statute anything you want. You've got to get at the real purpose of this statute. And we would submit that's what Judge Feist did here. Do you have any authority where in a situation like this where the actual text doesn't explicitly reference foreign affairs that struck it down as unconstitutional? Because I think there's a lot of evidence as to the real purpose, but the statute itself does not mention, have anything to do with foreign affairs. The legislature is smart. In fact, the head of the Judiciary Committee, now mayor of Los Angeles, Mr. Fuhrer, is a Harvard trained lawyer. I think he is... He's not the mayor. I think he's the city attorney. City attorney of Los Angeles. My apologies. It's okay. Was very astute in how he went about trying to piece this statute together. But to cite the case law, Your Honor, yes, if you look at the Oregon statute that dealt with probate procedures, it said nothing about Cold War era efforts and having a foreign policy with respect to that. In fact, it tried to divorce itself and put it away at arm's length so that when the court would go about looking at the legislative findings, looking at the history, looking at the real purpose, it would perhaps be deceived and thrown off. But that is not possible here as Judge Feist points out to you because he did precisely what the precedent here in the Ninth Circuit asked him to do, go look at the real purpose. It's kind of like sort of playing that game in an arcade here where the heads keep popping up and plaintiff needs to keep beating and popping them down. There's not one particular point that you look at. If you take one away, you still have five left. But what policy is it that this statute intrudes upon? Because we don't have, this is not a case of external restitution. I'm not even sure we have an internal restitution in this case. In this particular case, we have a proceeding that occurred in Germany in the 1950s that resulted in a settlement between the parties at that time that we submitted to the court. Not to get into the facts as to whether justice was served with respect to that, but to make the point that this is an area that is unique to the executive branch, an area that is occupied by the executive branch and fits within the foreign affairs. Von Saar tells you, Montessian tells you, and all the other cases here in the Ninth Circuit tell you that if you are going after and trying to create a special venue for Holocaust-related claims, you cannot do that. Well, in all those cases, Von Saar, Montessian, and Deutsch, the Holocaust was specifically mentioned in the statute. This is not so in this case, is it? It is not specifically mentioned in the statute, but it is referenced in a number of ways. Number one, there is a specific reference to the former statute, 354, which was found unconstitutional and providing relief for those claims who are by definition Holocaust claimants. Two, it specifically references types of causes of action, such as duress, that was not seen before in the prior statute. And duress, as we point out in the record, and as Judge Fee specifically notes, is a particular type of claim that was noted by the President's Commission on Holocaust Access. And it's a particular type of claim that has found favor in Holocaust-related claims as they are being brought here today in the United States. So you have to not just look at what you use as far as an identifier for that statute, but you look underneath that statute. And that is where we say the Court is supposed to stick its nose into what the legislature does here and look behind and determine the real purpose of this statute. And your case for that is? That is the Oregon case. I'm sorry, I think it's Jurgen. The name's escaping me. It's in our brief, but it has to do with the probate statutes that were passed in the Cold War era. And there was no mention of foreign policy or intruding into or disagreement with policies or procedures of the governments at that time. I also want to note, because it's important to raise where we are on this case, this is a motion to dismiss stage. But unlike the case that preceded us, it is not a fact-intensive case. And therefore it is very appropriate for a motion to dismiss stage. On the face of the pleadings, and has been conceded by plaintiffs, it is a claim that is otherwise barred by the applicable three-year statute of limitations, which is what Judge Fees applied. So we don't have to get into whether or not it should be remanded to go into a fact-finding. The other point is, we are examining the constitutionality of the statute under field preemption. So we don't need to bring or examine outside facts or have further hearings on it. The Judge Fees conducted special briefing, he had the full record beforehand, a record that was publicly available to both parts. So this is not something where you have to slice and dice and try to figure out what's fair or not fair. If there are no other questions, we would rest on Judge Fees' well-reasoned opinion that we think lays it out and follows applicable precedent that is very clear here before the Ninth Circuit. Thank you. Thank you. Just very briefly, the case that Mr. Schauber was referring to was the Jernig case. That statute, Oregon statute, did refer to foreign events and countries. It talks about when a citizen of a foreign country can inherit property in the U.S., and the Oregon statute said that someone from East Germany, as the plaintiff in that case was, could recover only if East Germany granted the same rights as the U.S. did. And then in practice, and that was the law, a similar law was at issue in Allen and Clark, not preempted. But in Jernig, the Supreme Court said, the way this is being applied, we're getting state courts looking at, well, is East Germany really democratic and, you know, do they really have the rule of law? And we think that that is the statute invites judicial intrusion and criticism of state courts. It's completely different from this. And I think that it's important to note that Jernig is the only case where the U.S. Supreme Court has invalidated a statute on field preemption. This is a very rare doctrine. It refused to decline to do field preemption in Allen v. Clark, which, as I said, involved nearly the same statute. But then when they got to Jernig, they didn't overrule Allen v. Clark. They specifically said, we're not overruling it, showing how narrow it is. And then the Supreme Court declined to address it in the Crosby case, Crosby v. National Council, and in the Garamendi case. So it's very rare. And as far as looking at, for the real purpose, I think that the court needs to look, again, at the footnote 3 to Mozazian, where the en banc court specifically reserved decision on whether you go beyond the text of the statute and the explicit legislative findings. And I think that it is just really not consistent with federalism for a federal court to be going into minute inquisition of what California legislators did. And if somebody mentioned the word concierger here, okay, that statute must be invalid. The opposing counsels said you can't change the law in the middle of the game. That's completely wrong. Bernstein case that we mentioned in the Second Circuit is one very similar to this. It involved a Holocaust victim who brought a claim for conversion of personal property. That claim was dismissed by the district court as being barred by the statute of limitations. The New York legislature changed the statute of limitations. The Second Circuit said, yes, you come within the new statute of limitations, and it doesn't violate due process. That's the Bernstein decision that's in 173 F. 3rd. There are several different Bernstein decisions. And another example of that is this court's decision in Campanelli where it said that the California legislature could change the statute of limitations to revive claims involving the Northridge insurance, Northridge earthquake insurance claims. So that, it does happen, and it's entirely appropriate so long as, and I submit that here where that, you know, a decision holding 338 C. 3 unconstitutional, that there's just no way to distinguish that from the decision implicitly upholding 338 C. 2 in the von Sacher case because in that, you know, that statute, as I mentioned, applies to Holocaust claims. It's narrower than covering all claims, and yet it's not preempted. And the only difference is that this one came after this court didn't like a statute that said, expressly mentioned Holocaust victims and, in its view, created a cause of action. And the California legislature ought to be able to extend statutes of limitations in a way that doesn't offend the principles that were set forth in von Sacher. And that's precisely what it's done here. Thank you, Your Honors. All right. Thank you very much. And with that, this matter is submitted as is the earlier matter.
judges: Pregerson, Nelson, Wardlaw